**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**


CHERYL MUSICK,                           )
                                         )
                    Plaintiff,           )
                                         )    **CIVIL ACTION**
v.                                       )
                                         )    **No. 12-2006-JWL**
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )
_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security disability benefits (SSD) under

sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423

(hereinafter the Act).  Finding no error in the Commissioner's final decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING that decision.

**I.      Background**

Plaintiff applied for SSD on February 8, 2006, alleging disability beginning

October 4, 1998.  (R. 48-50).  In proceedings before the Commissioner, Plaintiff's

application was denied, and in due course Plaintiff perfected an appeal to the District

Court seeking judicial review of that denial.  (R. 394-403).  Finding error in the

Administrative Law Judge's (ALJ's) decision, a magistrate judge recommended that the decision be reversed, and the case be remanded for further proceedings consistent with his Report and Recommendation. (R. 404-13). The District Court adopted the Report and Recommendation and entered judgment reversing the decision below and remanding the case for further proceedings. (R. 414-15). The Appeals Council vacated the decision and remanded the case to an ALJ. (R. 418).

On remand, ALJ Lauren R. Mathon completed the record and conducted another hearing on Plaintiff's application. (R. 678-91). Plaintiff appeared with counsel for an ALJ hearing on April 19, 2010. Id. At the hearing, testimony was taken from Plaintiff and from a vocational expert. Id. On July 15, 2010, ALJ Mathon issued her decision after remand, finding that Plaintiff was not disabled within the meaning of the Act at any time on or before September 30, 2004, the date Plaintiff was last insured for disability insurance benefits. (R. 374-81).

Plaintiff requested Appeals Council review of the decision after remand (R. 369-70), but the Council declined to assume jurisdiction. (R. 361-63). Therefore, the decision after remand became the final decision of the Commissioner after remand. (R. 361); Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004); see also 20 C.F.R. § 404.984(a) (2010)[1] (after remand, the ALJ's decision becomes the "final decision of the

---

[1]The Commissioner's decision in this case was issued on July 15, 2010, and unless otherwise noted, every citation to the Code of Federal Regulations in this opinion refers to the 2010 edition of 20 C.F.R. Parts 400 to 499, Revised as of April 1, 2010.

Commissioner after remand . . . unless the Appeals Council assumes jurisdiction of the case"). Plaintiff filed this case, seeking judicial review of the final decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g); see also, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial review as provided in section 405(g)"). Section 405(g) provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v.

Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Here, Plaintiff claims the ALJ erred in weighing the medical opinion of her treating physician, erred in failing to include in the RFC assessed a requirement that Plaintiff elevate her legs during the workday, and erred by failing to properly assess the credibility of Plaintiff's allegations of symptoms resulting from her impairments. In response, the Commissioner argues that the ALJ properly weighed and discounted the

opinion of Plaintiff's treating physician, properly evaluated and discounted the credibility of Plaintiff's allegations of symptoms, and properly excluded from her RFC assessment any requirement that Plaintiff elevate her legs during the workday. The court agrees with the Commissioner that Plaintiff has shown no error in the decision after remand, and affirms that decision. The court will address each alleged error in the order presented in Plaintiff's Social Security Brief.

## III.    Evaluation of the Treating Physician's Opinion

Plaintiff claims that the ALJ erred both when she failed to afford controlling weight to the medical opinion of Plaintiff's treating physician, and when she failed to afford appropriate deference to that opinion. (Pl. Brief 14-20). Plaintiff argues that the ALJ's evaluation of Dr. Huerter's opinion "is not supported by the substantial evidence of record." Id. at 16. From page 17 into page 19 of her brief, she summarizes the evidence of Dr. Huerter's treatment of Plaintiff and the limitations opined by Dr. Huerter, points out that accepting those limitations would require a finding of disability, and argues that there is no evidence in this case that is contrary to Dr. Huerter's opinion and that the opinion should have been afforded controlling weight. Plaintiff then argues that even if Dr. Huerter's opinion was not entitled to controlling weight, it was entitled to deference and should have been weighed in accordance with the regulatory factors for weighing medical opinions. (Pl. Brief 19). She argues that it is unknown how the regulatory factors were used in affording minimal weight to Dr. Huerter's opinion, and that the

decision should be reversed because the ALJ failed to analyze the opinion in accordance with the regulatory factors.  Id. at 19-20.

The Commissioner argues that substantial evidence supports the ALJ's determination to accord only minimal weight to Dr. Huerter's opinion.  (Comm'r Br. 5).  He appears to recognize a factual error in the ALJ's statement that Dr. Huerter did not specify limitations for the relevant period, but argues that the ALJ nonetheless provided sufficient rationale to discount the opinion.  He argues that the ALJ noted several reasons to discount Dr. Huerter's opinion including that it was not well-supported by his treatment notes or the other medical evidence, that it was not consistent with Plaintiff's statements and testimony or the other evidence of record, and that it conflicted with certain specific evidence.  Id. at 5-7.  The court finds no error because the ALJ provided sufficient specific, legitimate reasons to afford minimal weight to Dr. Huerter's opinion.

### A.    Standard for Evaluating a Treating Physician's Opinion

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2).  When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight she assigned that opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

In deciding whether to accord controlling weight to the treating physician's opinion, the ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Watkins, 350 F.3d at 1300 (quoting Soc. Sec. Ruling (SSR) 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is not inconsistent with the other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.  SSR 96-2p, cited by the court in Watkins, explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of controlling weight is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971).  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2012).  As the Ruling explains, evidence is "substantial evidence" precluding the award of controlling weight, if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or

8

not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the

opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255

F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52

F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor

analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th

Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

     After considering the above factors, the ALJ must give good reasons in his

decision for the weight he ultimately assigns the treating physician's opinion. If the ALJ

rejects the opinion completely, he must give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

### B.    The ALJ's Evaluation of Dr. Huerter's Opinion

     Dr. Huerter completed a "Physical Residual Functional Capacity Questionnaire"

(hereinafter Questionnaire or RFC Questionnaire) on April 28, 2008. (R. 311-15). In the

Questionnaire, Dr. Huerter stated that he treated Plaintiff "once or twice/year since 1999."

(R. 311). He presented an extensive list of impairments with which he had diagnosed

Plaintiff over the years, including atrial fibrillation, lymphedema with chronic cellulitis,

hyperlipidema, morbid obesity, arthritis, hypertension, hypothyrodism, and ventral hernia,

and listed the symptoms suffered due to those impairments. Id. He opined that Plaintiff

is able to lift or carry less than 10 pounds, is able to sit for 30 minutes at a time for a total

of less than 2 hours in an 8-hour workday, to stand for 10 minutes at a time for a total of

less than 2 hours in an 8-hour workday, that she must walk for 1 minute approximately

every 60 minutes, and that when walking or standing Plaintiff must use a cane or other

assistive device.  Id. at 312-13.  He opined that Plaintiff must elevate her legs 30 degrees

for 25 percent of each workday and must be allowed an unscheduled break each day

during which she must be allowed to rest for 2 to 3 hours before returning to work.  (R.

313).  Dr. Huerter also provided numerous postural and manipulative limitations and

opined that Plaintiff would be absent from work for more than four days per month as a

result of her impairments or their treatment.  Id. at 314.  Dr. Huerter answered "yes" in

response to a question whether Plaintiff's symptoms and limitations have been present

since October 1998.  Id. at 315.  Nearly two years later, on March 5, 2010, Dr. Huerter

signed a letter statement in which he asserted that Plaintiff's condition has not improved,

and that the limitations and restrictions contained in the RFC Questionnaire have been

present since he began treating Plaintiff in December 1999.  (R. 542).

The ALJ considered and summarized Dr. Huerter's opinion in her decision,

recognized Dr. Huerter as Plaintiff's treating physician, determined that controlling

weight could not be accorded to the opinion, accorded "minimal weight" to the opinion,

and explained her bases for doing so.  (R. 378).  She stated that the limitations opined by

Dr. Huerter are too restrictive in light of Dr. Huerter's treating notes during the relevant

time period and in light of the lack of objective medical evidence during the relevant time

period which would suggest such limitations existed before Plaintiff's date last insured. Id. She noted that Dr. Huerter did "not specify any limitations and such [sic] for the relevant time period at issue," that the opinion is inconsistent with the treating notes prior to the date last insured, and that the first time Dr. Huerter's treating notes mentioned hand pain--which might support the manipulative limitations opined--was almost four years after Plaintiff's date last insured. Id. In discussing the credibility of Plaintiff's allegations, the ALJ acknowledged that Plaintiff did have some limitations during the relevant time period, but found that they were not as severe as alleged. (R. 379).

## C. Analysis

A consideration that the ALJ kept in mind in her analysis, and which the court must keep in mind in its analysis is the finding that Plaintiff's date last insured for disability insurance benefits was September 30, 2004. Plaintiff admits that was her date last insured, and she acknowledges that she applied only for Title II (SSD) benefits. (Reply 1). Therefore, as the ALJ found, Plaintiff must show an inability to work on or before September 30, 2004. (R. 378); see also, 20 C.F.R. §§ 404.130-31, 404.315. It is irrelevant for purposes of disability under Title II of the Act if, or whether, Plaintiff became unable to work after that date. Bearing that consideration in mind, the court finds that the ALJ's determination not to accord controlling weight but rather to accord "minimal weight" to Dr. Huerter's opinion is supported by substantial record evidence.

First, the ALJ found Dr. Huerter's limitations too restrictive in light of his treating notes, and in light of the lack of medical evidence of such restrictions. As the ALJ's

decision suggests, even the most cursory review of Dr. Huerter's treatment notes reveals that Plaintiff's condition was not as debilitating before October of 2004 as it was thereafter.  Compare, (R. 212-309 (12/10/1998 to 10/03/2005)) with (R. 484-541 (3/29/2006 to 2/16/2010)).  Plaintiff weighed approximately 350 pounds when she retired from her keypunch job, but her weight increased to more than 450 pounds.  In at least one treatment note after her date last insured, Plaintiff's weight was recorded as unobtainable, and it was noted that her biceps was too large to accommodate a blood pressure cuff.  (R. 540).  Before her date last insured, there were occasional references in the treatment records to edema, whereas thereafter, the notes record edema as causing severe problems and there was one occasion where it was reported that her legs dripped with moisture due to her edema and that she used towels to absorb the drainage.

Medical records other than Dr. Huerter's treatment notes are to the same effect. Before the date last insured, they reveal episodic treatment without continuing debilitation.  After the date last insured, the records reveal more frequent treatment with a progressively more serious tenor to the reports.  Compare, (R. 166-207 (12/23/1998 to 9/13/2004)) with (R. 141A-165 (9/13/2004 to 1/19/2005)); (R. 208-11 (1/10/2005)); (R. 316-34 (10/25/2005 to 4/29/2007)); and (R. 543-677 (4/19/2007 to 3/01/2010)).

The ALJ also found that Dr. Huerter did not specify any limitations as such for the relevant time period at issue.  The court agrees.  The court must first determine what the ALJ meant in this regard.  As quoted herein, the ALJ stated that Dr. Huerter's opinion did "not specify any limitations and such [sic] for the relevant time period at issue."  The

Commissioner argues that this statement "appears to be a mistake of fact . . . because [Dr. Huerter] did check the box "yes" in response to the question 'Have the symptoms and limitations described in this questionnaire been present since 10/98?'" (Comm'r Br. 6). Plaintiff notes the Commissioner's argument, and asserts that "Dr. Huerter clearly indicated that the symptoms and limitations he opined were present as of October 1998." (Reply 2).

Without doubt, in her decision the ALJ acknowledged Dr. Huerter's opinion that the limitations expressed were present since October 1998. Moreover, she emphasized Dr. Huerter's reiteration in 2010 that Plaintiff's "limitations and restrictions have remained the same over the years."  (R. 378) (underline added); see also, (R. 542) (dated 3/5/2010) ("the limitations and restrictions I provided . . . have been present since I began treating Ms. Musick in December, 1999").  Immediately thereafter the ALJ commented, "[h]owever, the original opinion rendered in 2008, was too restrictive based on the evidence of record, or lack thereof."  (R. 378).  She then stated that Dr. Huerter's opinion did "not specify any limitations and such [sic] for the relevant time period at issue."  Id. In the very next sentence, she stated, "In addition, the opinion is too restrictive and inconsistent with treatment notes prior to the date last insured."  Id.  In context, the import of this portion of the ALJ's analysis was to emphasize that although Dr. Huerter opined that the restrictions stated were continuously present for over nine years from October 1998 through April 2008, and further opined that identical restrictions continued for two more years through March 2010, both Dr. Huerter's treating notes and the record

13

evidence from October 1998 through September 2004 demonstrate that Plaintiff was not as restricted during that period of time as she was four to six years later, during the period of time in which Dr. Huerter actually wrote the Questionnaire and his letter. Thus, she accorded Dr. Huerter's opinion minimal weight because it did "not specify any limitations [as] such for the relevant time period at issue." Id. (correction of typographical error and emphasis added by the court). In essence, the ALJ was stating that the limitations and restrictions opined by Dr. Huerter covered an extended period of time in which the record reveals much more serious limitations and restrictions in the latter portion of that time period and much less serious limitations and restrictions in the earlier portion of the period. She found that because Dr. Huerter's opinion purported to provide limitations and restrictions for the entire period, it did not actually provide limitations and restrictions "as such" for the earlier portion of the period--which was more remote in time and memory from the dates at which Dr. Huerter recorded his opinion, and which was the period during which the record reveals less serious limitations and restrictions.

Finally, the ALJ discounted Dr. Huerter's opinion regarding manipulative limitations because the first mention of hand pain in Dr. Huerter's treating notes was in 2008, almost four years after Plaintiff's date last insured. (R. 378). The court's review of the record supports this finding. The first treatment record in which Dr. Huerter mentioned Plaintiff's hand pain was at the visit which he stated was mostly for the purpose of filling out the RFC Questionnaire. (R. 530-31) (dated 4/28/2008) (Plaintiff's attorney "asked me to fill out some paperwork. Most of today's visit was for this

purpose."). Moreover, as the ALJ stated, even in that note Dr. Huerter acknowledged, "There is no deformity of her hands and no active synovitis." (R. 530). Plaintiff admits that arthritis in her hands was not mentioned in treatment records before her date last insured, but she argues that the arthritic condition was developing before that date. (Pl. Brief 18). Be that as it may, the fact remains that the arthritis in Plaintiff's hands was insufficient before her date last insured to merit even a mention in the treatment notes.

As the court's discussion above reveals, the ALJ's evaluation of Dr. Huerter's opinion was proper and met the legal standard for weighing a treating source opinion. The ALJ properly found that, as to the period before Plaintiff's date last insured, Dr. Huerter's opinion is not consistent with the other substantial record evidence and is unworthy of controlling weight. Consequently, he evaluated the opinion in accordance with the regulatory factors for weighing medical opinions, accorded it minimal weight, and provided specific, legitimate reasons for doing so. More is not required. The court is at a loss to understand Plaintiff's assertions that the ALJ failed to utilize the regulatory factors in her evaluation and that it is unknown how the factors were used. To be sure, the ALJ did not perform a factor-by-factor analysis and did not name each of the factors to be considered. But, such an analysis is not required. Moreover, the ALJ specifically noted that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." (R. 377). Here, the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254,

1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

The court finds two additional matters in Plaintiff's briefs worthy of comment at

this juncture. These matters relate to counsel's characterization of the record in this case,

and to counsel's allegation of post-hoc rationalization on the part of the Commissioner.

In attempting to show that her impairments were disabling before her date last

insured, Plaintiff asserted that she was hospitalized for bleeding varicose veins in August

2000, and implied that she was seen by Dr. Huerter forty-five times in the forty-nine

months between August 2000 and September 2004. Both arguments stretch the facts as

revealed in the record. Plaintiff argued, "In August 2000 Ms. Musick was hospitalized

for atrial fibrillation and bleeding varicose veins. Consequently, Ms. Musick was placed

on the blood thinning medication Coumadin." (Pl. Brief 16) (citations omitted). The

apparent significance of hospitalization for "bleeding varicose veins" before Plaintiff's

date last insured is that Plaintiff has had varicose veins and edema in her legs for much of

the period at issue, including before her date last insured. As discussed above, Plaintiff's

weight has increased over the years, and the severity of her edema as recorded in the

treatment notes has also increased over the years. Therefore, if it is shown that Plaintiff

had "bleeding varicose veins" before her date last insured, it might be inferred that her

condition was disabling before her date last insured.

Plaintiff is correct that on August 3, 2000 she "was admitted [to the hospital] with

bleeding varicose vein and possible new-onset atrial fibrillation." (R. 233). However, the

incident was for a <u>single</u> bleeding varicose vein, and immediately below the line quoted

above is the explanation of the circumstances surrounding the admission:

> History of Present Illness:  The patient was reaching across her side today
> and accidentally scratched open a scab that was on a varicose vein on her
> right hip.  This was an area that had been previously injured when a dog
> jumped on her.  When the scab was removed, the patient was unable to stop
> the bleeding and called paramedics to take her to the Emergency Room,
> where hemostasis was finally achieved with suturing.

<u>Id.</u>  While this was certainly an acute incident requiring emergency room treatment, there

is no indication in the record evidence that there were multiple bleeding varicose <u>veins</u> in

this incident, or multiple incidents of bleeding varicose veins before Plaintiff's date last

insured.  Moreover, the other record cited by Plaintiff, Dr. Huerter's related treatment

note, reveals additional details regarding the incident.  "The patient was in the hospital on

08/03/00 and was kept overnight because she was found to be in atrial fibrillation after a

visit for bleeding varicose vein that had been cut."  (R. 227) (dated 08/16/2000).  In that

entire treatment note, this is the only mention of Plaintiff's bleeding varicose vein,

whereas the note contains nearly a page regarding the doctor's consideration of atrial

fibrillation, and his treatment plan to evaluate and manage that issue.

     Plaintiff also writes, "Between August 2000 and September 2004, Ms. Musick was

seen <u>in Dr. Huerter's office</u> forty-five times for follow-up regarding her Coumadin

therapy."  (Pl. Brief 16).  While the court acknowledges that Dr. Huerter's treatment

records contain 50 laboratory reports (by the court's count) reflecting test results

regarding "coagulation" during this period, there is no indication of what samples

(presumably blood) were used to secure the results, or when, where, or how the samples were obtained. There is no indication that Plaintiff went to Dr. Huerter's office to provide the samples, and there are very few instances where the records indicate that Dr. Huerter saw Plaintiff on the same day a "coagulation" lab report was prepared or drawn. Moreover, the record supports the ALJ's finding that there are "significant gaps in treatment" (R. 378), and Dr. Huerter himself reported that he only saw Plaintiff "once or twice/year since 1999." (R. 311). This record does not reflect the extensive personal treatment implied by Plaintiff's Brief. The court would caution counsel to be more precise in the language she uses to characterize the record in her arguments to the court.

Finally, in her Reply Brief Plaintiff asserts that both when the Commissioner pointed to evidence supporting the weight the ALJ accorded to Dr. Huerter's opinion, when he organized his arguments regarding that evidence in accordance with the regulatory factors for weighing medical opinions, and when he pointed out record evidence conflicting with Dr. Huerter's opinion, that his arguments were improper post hoc rationalization which should be disregarded by the court. (Reply 2-3).

As Plaintiff suggests, an ALJ's decision should be evaluated based solely upon the reasons stated therein. Robinson, 366 F.3d at 1084. A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe, 755 F.2d at 149 n.16. Nor may a reviewing court create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By

considering legal <u>or evidentiary</u> matters not <u>considered</u> by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004).  But, although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) (quoting, respectively, <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947); and <u>Bowman Transp. Inc. v. Ark.-Best Freight Sys., Inc.</u>, 419 U.S. 281, 286 (1974)).

It is a practical impossibility for an ALJ's decision to discuss, summarize, or even cite all of the evidence in a record consisting of over six hundred pages, such as is present in this case.  Therefore, the decision must only demonstrate that the ALJ considered all of the evidence, and she is not required to <u>cite</u> all of the evidence supporting each of her findings.  <u>Castillo v. Astrue</u>, No. 10-1052-JWL, 2011 WL 13627 at *10-11 (D. Kan. Jan. 4, 2011).  Moreover, as the court recognized in <u>Allen</u>, it would be improper for a reviewing court to consider evidentiary matters which were <u>not considered</u> by the ALJ.  However, a reviewing court may consider evidence which was <u>actually considered</u> by the ALJ even if that evidence was not cited in the decision.  <u>Thongleuth v. Astrue</u>, No. 10-1101-JWL, 2011 WL 1303374 at *6 (D. Kan. April 4, 2011).  Nevertheless, a reviewing court may not create post hoc justifications or rely upon appellate counsel's post hoc rationalizations to affirm the ALJ's decision.  The Commissioner's decision may be affirmed only "on the same basis articulated in the order by the agency itself." <u>Burlington</u>

19

Truck Lines, Inc. v. United States, 371 U.S. 156, 169 (1962) (citing Chenery Corp., 332

U.S. at 196). However, neither Burlington Truck Lines, nor Chenery Corp. suggest that

an agency's decision must be supported only by evidence cited in the agency decision.

Rather, they require that the decision be evaluated based upon the rationale, bases,

grounds, explanations, or reasons relied upon by the agency. Burlington Truck Lines,

371 U.S. at 169 ("on the same basis articulated in the order by the agency"); Chenery

Corp., 332 U.S. at 196 ("solely by the grounds invoked by the agency"); Haga v. Astrue,

482 F.3d 1205, 1207 (10th Cir. 2007) ("ALJ did not provide these explanations");

Robinson, 366 F.3d at 1084 ("decision should have been evaluated based solely on the

reasons stated in the decision"); Allen, 357 F.3d at 1142 (court relied "upon certain

analytical revisions offered on judicial review," and the "ALJ's decision cannot stand on

its own erroneous rationale"); Ramirez v. Barnhart, No. Civ. A. 02-2261-KHV, 2003 WL

21105082, *6 (D. Kan. April 4, 2003) (citing Newton v. Apfel, 209 F.3d 448, 455 (5th

Cir. 2000) ("decision must stand or fall with reasons set forth in decision")). Therefore,

in evaluating the ALJ's decision, the court first determined the ALJ's rationale, bases,

grounds, explanations, or reasons for discounting Dr. Huerter's opinion, and then

determined whether substantial record evidence supports that finding and the rationale

relied upon. Where the Commissioner pointed to record evidence which was considered

by the ALJ and which supports the ALJ's rationale, the court considered that evidence.

Where the Commissioner pointed to record evidence (even evidence which was

considered by the ALJ), and attempted to provide an alternative rationale in support of the

ALJ's finding (Comm'r Br. 6-7) (i.e., Dr. Huerter's opinion was not consistent with

Plaintiff's statements and testimony regarding accrued sick leave and ability to care for

her mother), the court recognized the alternative rationale as merely post hoc

rationalization and did not rely upon it to affirm the ALJ's finding.

## IV. Accommodation in the RFC for Plaintiff's Need to Elevate Her Legs

Plaintiff points to record evidence that she was advised to keep her legs elevated to

reduce her edema, that Dr. Huerter opined that she must elevate her legs 30 degrees for 25

percent of the workday, and that the vocational expert testified that Plaintiff would be

unable to perform her past work as a keypunch operator if she were required to elevate

her legs throughout the workday. (Pl. Brief 20-21). She argues that in light of this

evidence it was error for the ALJ to fail to include some requirement to elevate her legs in

the RFC assessment, and that consequently the vocational expert's testimony does not

support the ALJ's decision. Id. at 20. The Commissioner acknowledges that two

treatment notes prepared before Plaintiff's date last insured suggest that she needed to

elevate her legs to control swelling, but argues that the evidence indicates edema was

discussed much more extensively in the treatment notes, and was a much larger concern,

after her date last insured. (Comm'r Br. 12-13) (citing 2 treatment notes before and 12

treatment notes after the date last insured). He concludes by arguing that "the weight of

the evidence fails to support Plaintiff's contention that before her date last insured, she

had a medically indicated need to elevate her legs during the workday." Id. at 13

(emphasis in Comm'r Br.).

The ALJ discussed this issue in her decision:

> The claimant did seek treatment for leg edema in 2000, and she needed to elevate her legs in order to help control the swelling. However, more recent evidence indicates the claimant's alleged edema was noted to have greatly improved with compression stockings in December 2009. (Exhibit 4F/18 [(R. 501)]). Thus, with simple treatment, the edema is improved.

(R. 379).

The record evidence confirms the ALJ's finding.[2] The earlier treatment notes in the relevant period acknowledge edema without specific treatment recommendations. On March 14, 2000, Dr. Huerter's examination revealed 2+ edema on Plaintiff's extremities (R. 230), and on April 14, 2000, revealed "1-2+ edema @ ankles." (R. 229). On August 20, 2002, he recorded "chronic venous stasis with edema" (R. 220), and on August 23, 2002, zero edema. (R. 223). As the Commissioner notes in his brief, only two treatment notes, which occurred later in the relevant period, reflect specific treatment. A treatment note dated October 20, 2002 reveals that Plaintiff complained of "swelling on foot, ankle, and leg [right] side." (R. 218). Dr. Huerter recorded this as an increase in chronic edema

---

[2]Many of the treatment notes cited herein were handwritten and are by no means clear. The court accurately records the notes which it can read clearly, and draws all inferences regarding the remainder in the light most favorable to the ALJ's decision. To the extent Plaintiff asserts a different interpretation, the court notes that the ALJ is the factfinder in a Social Security case and that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

on the right, as 4+ edema, and included the cryptic notation "elevate." Id. The next mention of edema appears in a July 12, 2004 note in which Plaintiff seemed to complain of edema with discomfort especially in the heat, Dr. Huerter recorded 3+ edema and noted that he counseled Plaintiff regarding "elevation" and "stockings." (R. 215). The next treatment note is dated October 3, 2005, about fifteen months later and about a year after Plaintiff's date last insured. (R. 214). That note merely records "brawny edema" of the extremities. Id.

As the court stated earlier when discussing Dr. Huerter's opinion, the treatment notes record edema as causing much more severe problems after Plaintiff's date last insured (R. 484-541 (3/29/2006 to 2/16/2010)) than before, and there was one occasion where it was reported that her legs dripped with moisture due to her edema and that she used towels to absorb the drainage. (R. 541 (8/24/2006)). Nevertheless as the ALJ noted, even during the period after her date last insured, it was recorded that Plaintiff's "LEgs [sic] are improved with regular use of compression hose." (R. 501) (dated 08/27/2009).

The court finds no error in the ALJ's determination not to include a requirement in the RFC applying to the time before her date last insured that Plaintiff must elevate her legs at work. As discussed above, the ALJ properly assigned minimal weight to Dr. Huerter's opinion that Plaintiff must elevate her legs 30 degrees for 25 percent of the workday, because it did not apply to the period before Plaintiff's date last insured. Furthermore, although on two occasions before Plaintiff's date last insured, Dr. Huerter suggested that Plaintiff should elevate her legs, he also suggested in the same treatment

23

notes that compression stockings were an acceptable alternative, he did not specify a frequency or length of time for each elevation, and he did not state that the legs must be elevated during the workday. Moreover, the record evidence suggests that regular use of compression stockings before Plaintiff's date last insured would improve Plaintiff's edema. Plaintiff has not demonstrated from the record evidence that before her date last insured compression stocking would not have sufficed to provide adequate control of her edema, especially if supplemented by elevating her legs at break, at lunch, and at home.

## V.     Credibility

In her final allegation of error Plaintiff claims the ALJ erred in evaluating the credibility of her allegations of symptoms before her date last insured. Plaintiff points to her 34-year work record with one employer, to Dr. Huerter's opinion, to Plaintiff's testimony that she obtains assistance from friends and neighbors to care for her animals and that her daily activities are limited, and to Plaintiff's obesity, "bleeding veins," and edema, and argues that the ALJ should have weighed these facts in favor of her credibility and found that her allegations of disabling symptoms were credible. The Commissioner argues that the ALJ properly discounted the credibility of Plaintiff's allegations of symptoms and explains how in his view the record evidence supports the ALJ's credibility finding. The court finds no error in the ALJ's credibility finding.

### A.     Standard for Evaluating Credibility

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

<u>Thompson</u>, 987 F.2d at 1488(citations and quotation omitted).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors

which should be considered.  <u>Luna</u>, 834 F.2d at 165-66; <u>see also</u> 20 C.F.R.

§ 404.1529(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

<u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) (quoting <u>Thompson</u>, 987 F.2d at

1489.

The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating credibility which overlap and expand upon the factors stated by

the court:  Daily activities; location, duration, frequency, and intensity of symptoms;

factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side

effects of medications taken to relieve symptoms; treatment for symptoms; measures

plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

### B.       The ALJ's Credibility Determination

In analyzing finding number 5 in her decision, the ALJ included a discussion and analysis regarding her evaluation of the credibility of Plaintiff's allegation of symptoms resulting from her impairments. (R. 377-80). Her evaluation of Dr. Huerter's opinion appears in this discussion also. (R. 378). The ALJ cited the regulations and rulings relevant to a credibility determination and summarized the standard she applied. (R. 377). Plaintiff does not claim the ALJ applied the incorrect standard. The ALJ

determined that there was a nexus between Plaintiff's allegations of symptoms and her impairments, so she considered all of the record evidence in evaluating the credibility of Plaintiff's allegations.  (R. 377).  She determined that Plaintiff's allegations are not credible.  Id.

The ALJ recognized that Plaintiff must establish disability on or before her date last insured, and analyzed Plaintiff's allegations only as they relate to that relevant period of time, and she noted that there were significant gaps in Plaintiff's treatment for her impairments.  Id. at 378.

The ALJ summarized Plaintiff's allegations of disabling symptoms, and concluded that although Plaintiff "did have some limitations during the time period at issue, [they were] not to the extent alleged."  Id. at 379.  She explained her reasons for finding Plaintiff's allegations not credible, which included:  Plaintiff's activities were more extensive during that period than her alleged symptoms would accommodate; her heart problems were controlled with medication before her date last insured; when she was working she weighed 350 pounds, and after her date last insured she gained additional weight suggesting she was less limited before her date last insured than after; she rarely sought treatment for her hernia before her date last insured, and testified that she received no treatment for it; Plaintiff's "allegations regarding her knees, bleeding veins, and severe hip pain all arose after the date last insured;" and Plaintiff "lived on a farm and cared for animals such as chickens, geese, horse, and ducks."  Id.

**C.** **Analysis**

Giving the ALJ's credibility determination the deference of which it is due, the court finds no error. The ALJ considered appropriate factors regarding credibility and closely and affirmatively linked her findings to substantial record evidence. More is not required. Plaintiff's appeal to her substantial prior work history, to Dr. Huerter's opinion, to Plaintiff's daily activities, and to limitations allegedly resulting from obesity, "bleeding veins," and edema ignores the findings of the ALJ and the fact that her date last insured was September 30, 2004, and essentially asks the court to reweigh the evidence and substitute its credibility finding for that of the Commissioner.

Most importantly, the court may not reweigh the evidence and substitute its judgment for that of the ALJ. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172. The court has already determined that the ALJ properly discounted Dr. Huerter's opinion as it relates to the relevant time period before Plaintiff's date last insured, so his opinion does not add credence to Plaintiff's allegations relating to that period. Plaintiff's appeal to her daily activities looks primarily to her activities after her date last insured and fails to account for the fact that the record evidence reveals a progressive decrease in abilities and activities and that the ALJ recognized that she needed more assistance as time progressed. With regard to obesity, "bleeding veins," and edema, Plaintiff once again ignores the progression revealed by the record and acknowledged by the ALJ. The court will not belabor the point further.

Plaintiff has shown no error in the final decision of the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 5th day of February 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**